## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

| | | |
|---|---|---|
| **JIM BARRETT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION NO.:** |
| | ) | **4:15-CV-0055-HLM** |
| **v.** | ) | |
| | ) | |
| **WALKER COUNTY SCHOOL** | ) | |
| **DISTRICT, MR. DAMON RAINES in** | ) | |
| **his official and individual capacities,** | ) | |
| **MR. MIKE CARRUTH, in his official** | ) | |
| **Capacity,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS

**COME NOW**, the Walker County School District, Damon Raines and Mike Carruth, Defendants in the above-styled action ("Defendants"), and file this Defendant's Statement of Undisputed Material Facts To Which There Is No Genuine Issue To Be Tried.

1.

On February 11, 2015, Janet Cobb received in the U.S. mail a letter from Jim Barrett. She stamped the received date reflected on the letter. (Ex.A, ¶ 4)

2.

Plaintiff testified that a true and correct copy of the letter requesting to speak at public comment was attached to the complaint.  (Doc. 1-1, p. 22, Doc. 25-1, ¶11)

3.

Plaintiff testified that the February 9th letter had two "clerical" errors.  He claimed that he put the wrong year – 2014 -- for the date of the letter and put the wrong date for the board meeting.  (Doc. 1-1, p. 22, Doc. 25-1, ¶11)

4.

The letter received by Janet Cobb from the Plaintiff requesting to speak at public comment was different from the letter that he testified to in this lawsuit. (Ex.A, ¶ 4, Ex. 1)(Doc. 1-1, p. 22, Doc. 25-1, ¶11)

5.

The letter that the District actually received from the Plaintiff has his signature on it.   (Ex.A, ¶ 4 – Ex. 1)

6.

The letter that the District actually received from the Plaintiff revealed that there was no date on the letter. In addition, the letter that the District actually received from the Plaintiff introduces himself as "President of the Walker County Association of Educators."  (Ex.A-- Ex.1)

7.

The letter that the School District received from the Plaintiff is not the same one that he swore that he sent to the School District requesting public comment. (Ex.A--Ex. 1; Doc. 1-1, p. 22, Doc. 25-1, ¶11)

8.

Plaintiff claimed several times under oath that he mailed his letter on February 9, 2015.  (Doc. 1-1, p. 22, Doc. 25-1, ¶11; Doc. 42, ¶19)

9.

The envelope in which his letter was mailed, showing the letter was postmarked on February 10, 2015.  (Ex. A--Ex.1)

10.

Plaintiff did not mail his request to speak at public comment on February 9, 2015, because the envelope in which he mailed the letter reflected that it was postmarked on February 10, 2015.  (Doc. 1-1, p. 22, Doc. 25-1, ¶10; Doc. 42, ¶19; Ex. A-- Ex. 1)

11.

As required by Policy BCBI, there is a procedure called Public Participation at Board Meetings-Superintendent Procedures. (Doc. 13-1, p. 4, ¶14; Doc. 1-1, p. 6)

2058869_1.doc

12.

The local parent who spoke at public comment on April 20, 2015, satisfied the meeting requirement with the Superintendent before speaking at public comment.  His comments at public comment concerned the District's standards based grading. (Ex. B ¶4 -- Ex. A)

13.

As required by Policy BCBI, there is a procedure called Public Participation at Board Meetings-Superintendent Procedures. (Ex. B ¶5; Doc. 1-1, p. 6)

14.

The procedure includes a provision as follows: "When issues arise that stimulate high community interest, the Board may schedule special meetings specifically to invite public comment."  (Ex. B ¶6)

15.

The procedure includes a provision as follows: "While citizens may use their allotted time to take serious issue with Board decisions, the Board will not permit anyone to become personally abusive of individual Board members or Board employees." (Ex. B ¶7)

2058869_1.doc

16.

The purposes behind the required investigation about employee complaints are to resolve issues at earliest time as possible for the efficient operation of the meetings and to preserve the decorum of the board meetings. (Ex. B ¶8)

17.

The purpose behind the required meeting with the superintendent prior to requesting to speak at public comment under Policy BCBI is to resolve issues at the earliest time in order to provide the official operation of the district and board meetings. (Ex. B ¶9)

18.

The board meeting on February 17, 2015, was to be a regular board meeting at which board votes were to be taken on agenda items.  However, that meeting was cancelled due to inclement weather. (Ex. B ¶10)

19.

The board agenda items from the meeting on February 17th, which was cancelled, were transferred to the meeting on March 10, 2015. (Ex. B ¶11)

20.

The meeting on March 10, 2015, included board votes on agenda items. (Ex. B ¶12 -- Ex.B)

21.

Jim Barrett never informed me that he ever had any urgent issue that he wanted to speak on during public comment at the board meeting of the Walker County Board of Education.  (Ex. B ¶13)

22.

Neither the Board meeting for February 17, 2015, nor the Board meeting for March 10, 2015, included any agenda item regarding the grading policy. (Ex. B ¶14)

23.

The board meetings on August 12, 2015, and October 14, 2014, included an item on Standards-Based Learning. (Ex. B ¶15 -- Ex.  C)

24.

Jim Barrett requested by email information on September 10, 2014, to speak at public comment. The same day, my staff provided him with the Policy BCBI, which established what he needed to do in order to speak at public comment.  (Ex. B ¶16 -- Ex. D)

25.

Defendant Raines sent Jim Barrett an email on March 3, 2015, informing him

that his name will be placed on the agenda for the Board meeting on March 10,

2015. (Ex. B ¶17 -- Ex. E)

26.

During the meeting on February 9, 2015, Defendant Raines handed Jim Barrett

an investigation report of the items that he had asked to investigate.  (Ex. B ¶18 --

Ex. F)

27.

During the 2015-16 school year, staff and administrators can ask questions or make

comments about Standards-Based Grading through the informational newsletter

that is circulated weekly entitled On-Going Conversations. (Ex. B ¶19 --  Ex.G)

28.

Jim Barrett testified that he had spoken at regular board meetings in the past

without being required to meet twice with the Superintendent.  (Doc. 25-1, p. 5, ¶

15) However, a review of the Board meeting minutes from July, 2007, to present

do not reflect any such comments by Mr. Barrett.   (Ex. B ¶20)

29.

Plaintiff could have handed Defendant Raines a written request on February 8, 2015, during his second meeting with Defendant Raines, or emailed his request to Defendant Raines just as he emailed him several times before, or dropped off the request at central office the  instead of relying on U.S. Mail.  (Doc. 1-1, p. 22)

30.

Defendant Raines, as the Superintendent of the School District, is responsible for the day-to-day operations of the School District and implementation of the policies set by the Board of Education. (Doc. 13-1, p. 2, ¶7)

31.

The Board meets on the third Monday of each month, except those months where the third Monday is a legal holiday. (Doc. 13-1, p. 2, ¶8)

32.

The Board holds planning sessions on the Tuesday preceding each meeting. *Id.* The Board's meetings and planning sessions are open to the public and media in accordance with O.C.G.A. §50-14-1 *et seq.* ("Georgia's Open Meetings Act"). (Doc. 13-1, p. 2, ¶9)

33.

The full Board is present at both meetings. (Doc. 13-1, p. 2, ¶10)

34.

The agenda for the Board's meetings is prepared by Defendant Raines in collaboration with the Chairman of the Board.  An agenda is prepared for each planning session and each regular monthly meeting. The superintendent provides to each member of the Board a copy of the tentative agenda for the regular monthly meeting at the Board's planning sessions. (Doc. 13-1, p. 2, ¶11)

35.

On July 17, 2006, the Board adopted a policy concerning public participation in Board meetings. (Doc. 13-1, p. 2, ¶12--Ex. B - Policy BCBI)

36.

After a person complies with these prerequisites, Defendant Raines does not have discretion to not put that person on the Board's agenda for the next scheduled meeting. (Doc. 13-1, p. 2, ¶13)

37.

The superintendent adopted procedures to implement said policy. (Doc. 1-1 at Ex. B; Doc. 13-1, p. 4, ¶14)

38.

In addition to public comment, the Board often recognizes certain accomplishments at Board meetings, such as student, team, or school

achievements.  These recognitions are distinct and different from public comment

under Board policy BCBI.  This portion of the agenda is by invitation for the sole

purpose of recognizing success.  (Doc. 13-1, p. 4, ¶15)

39.

In September, 2014, Plaintiff first contacted Defendant Raines regarding the

issue of standards-based grading. (Doc. 13-1, p. 4, ¶16)

40.

On January 21, 2015, Plaintiff was advised that Defendant Raines was

available to meet on January 28, 2015 in accordance with Board Policy BCBI.

(Doc. 13-1, p. 6, ¶18)

41.

Plaintiff agreed to the meeting on January 28, 2015.  At that meeting,

Plaintiff provided me with a memo stating that the following were "concerns for

investigation":

1.     The Board of Education's decision to switch to the Standards Based
Grading policy and whether proper input was obtained from the
stakeholders.
2.     The School District's Strategic Plan and the underrepresentation of
teachers in the development of goals for the plan.
3.     The district administration's philosophy and policy on tardiness,
absences, and attendance in general, and the consistent application of the
policy across buildings?

2058869_1.doc

    4.      Why have teachers been told it is not possible to receive a "4" in their
    first TKES formal evaluation?
Consequently, I began investigating.  (Doc. 13-1, p. 6-7, ¶19)

                                    42.

    A follow-up meeting with Plaintiff was scheduled to take place on February

9, 2015 (on the eighth day of the ten working days detailed in the Board approved

policy), in order to answer any of Plaintiff's questions.  At that meeting, Plaintiff

said nothing to me about wanting to speak to the Board. (Doc. 13-1, p. 7, ¶20)

                                    43.

    On that same date, February 9, 2015, Plaintiff alleges he mailed a letter to

the Superintendent requesting to be placed on the agenda for public comment at the

February 2015 Board meeting.  (Doc. 13-1, p. 7, ¶21)

                                    44.

    Defendant Raines did not receive Plaintiff's letter until February 11, 2015.

On that same date, Defendant Raines wrote Plaintiff a letter advising him that he

would be placed on the agenda for the March 10, 2015, Board planning session

because his request to address the Board was not timely to be placed on the agenda

for the February 17th Board meeting.  (Doc. 1-1—p.24; Doc. 13-1, p. 7, ¶22)

2058869_1.doc

45.

The February 17th meeting of the Board was cancelled due to inclement weather. ((Doc. 13-1, p. 8, ¶23)

46.

Thus, the first opportunity Plaintiff would have had to address the Board following his written request was the March 10th planning session.  Plaintiff was placed on the agenda for public comment for the Board meeting on March 10, 2015. (Doc. 13-1, p. 8, ¶24)

47.

Without any notice to Defendant Raines, the School District, or the Board, Plaintiff did not appear at the March 10th planning session even though he was on the agenda for that meeting. (Doc. 13-1, p. 8, ¶25)

48.

A local parent spoke at public comment on April 20, 2015, pursuant to policy BCBI, to address the Board regarding standards-based grading.  (Doc. 13-1, p. 8, ¶26)

49.

Neither Policy BCBI nor the public comment procedure requires that the written request to speak at public comment be mailed by U.S. mail. (Doc. 1-1, p.

2058869_1.doc

4,6)

50.

"Meetings of the Board of Education are structured to allow the Board to conduct its public business. Meetings of the Board are open to the public, but are not to be confused with public forums." (Doc. 1-1, p. 4; p.6)

51.

Plaintiff emailed his request to speak at public comment on January 20, 2015, at 2:55 p.m.  Defendant responded to Plaintiff's request to speak at public comment the next day after he made the request on January 21, 2015, at 1:23 p.m. (Doc. 1-1, pp. 16, 18)

Respectfully submitted this 24th day of February, 2016.

GREGORY, DOYLE, CALHOUN & ROGERS, LLC
Attorneys for Defendant

/s/ Randall C. Farmer
Randall C. Farmer, Esq.
Georgia Bar No. 255345
William P. Miles
Georgia Bar No. 505828
49 Atlanta Street
Marietta, GA  30060
Tel:  (770) 422-1776

2058869_1.doc

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| JIM BARRETT, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO.: |
| | ) | 4:15-CV-0055-HLM |
| v. | ) | |
| | ) | |
| WALKER COUNTY SCHOOL | ) | |
| DISTRICT, MR. DAMON RAINES in | ) | |
| his official and individual capacities, | ) | |
| MR. MIKE CARRUTH, in his official | ) | |
| Capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of February, 2016, I served a copy of

## DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS

using CM/ECF which will automatically send e-mail notification to:


Attorneys for Plaintiff:

Gerald Weber
Law Offices of Gerry Weber
P.O. Box 5391
Atlanta, GA 31107
wgerryweber@gmail.com

Craig Goodmark
Goodmark Law Firm
209 B. Swanton Way
Decatur, GA 30030
cgoodmark@gmail.com

2058869_1.doc

GREGORY, DOYLE, CALHOUN & ROGERS, LLC
Attorneys for Defendant

s/ Randall C. Farmer
Randall C. Farmer
Georgia Bar No. 255345
William P. Miles
Georgia Bar No. 505828
49 Atlanta Street
Marietta, GA  30060
Tel:  (770) 422-1776
E-mail: rfarmer@gregorydoylefirm.com
          wmiles@gregorydoylefirm.com

2051579_1.DOC

2058869_1.doc